UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

KERRY JENNIFER SCROGGINS,

    Plaintiff,

v.                                                          Civil Action No. __3:22cv545__

LEXISNEXIS RISK SOLUTIONS INC.,

    Defendant.

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, **KERRY JENNIFER SCROGGINS** (hereafter "Plaintiff" or "Ms. Scroggins"), by Counsel, and as for her Complaint against **LEXISNEXIS RISK SOLUTIONS INC.** ("LexisNexis") states as follows:

### PRELIMINARY STATEMENT

1. This is an action for statutory, actual, and punitive damages, costs, and attorney fees, brought pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681a–x ("FCRA").

2. Before the enactment of the FCRA, inaccurate and misleading information was identified as "the most serious problem in the credit reporting industry." 115 Cong. Rec. 2411 (Jan. 31, 1969). With this problem in mind, Congress enacted the FCRA in 1970 to ensure the "confidentiality, accuracy, relevancy, and proper utilization" of credit reports. 15 U.S.C. § 1681(b). This section imposes a high, and often disregarded, standard on consumer reporting agencies. *See, e.g., Burke v. Experian Info. Sols., Inc.*, 2011 WL 1085874, at *4 (E.D. Va. Mar. 18, 2011) (breaking down the requirements of § 1681e(b) and explaining that "'assure' means 'to make sure or certain: put beyond all doubt,'" "'[m]aximum' means the 'greatest in quantity or highest degree attainable[,]' and 'possible' means something 'falling within the bounds of what

may be done, occur or be conceived.'" (quoting *Webster's Third New International Dictionary* 133, 1396, 1771 (1993)).

3. To accomplish Congress' goals, the FCRA contains a variety of requirements to protect consumers, including § 1681e(b), one of the cornerstone provisions of the FCRA. Whenever a consumer reporting agency prepares a consumer report, § 1681e(b) requires the CRA to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates. 15 U.S.C. § 1681e(b).

4. LexisNexis is a consumer reporting agency that regularly sells consumer reports to other consumer reporting agencies, creditors, employers, insurers and other users of consumer reports. LexisNexis fell short of its duty under the FCRA here, as it reported Plaintiff as deceased when she is not.

5. The Consumer Financial Protection Bureau has noted, "experience indicates that [CRAs] lack incentives and under-invest in accuracy." Consumer Fin. Prot. Bureau, Supervisory Highlights Consumer Reporting Special Edition 21 (Issue 14, March 2, 2017).

6. Statutes like the FCRA therefore provide consumers with the only mechanism by which they can force CRAs to report accurate information about them.

**JURISDICTION & VENUE**

7. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, 15 U.S.C. § 1681p.

8. Venue is proper in this District as Plaintiff is a resident in this District, the violations described in this Complaint occurred in this District, and the Defendant transacts business within this District.

## PARTIES

9. The Plaintiff is a natural person residing in New Kent County, Virginia and at all times relevant to the Complaint was a "consumer" as defined by 15 U.S.C. § 1681a(c).

10. Defendant is a foreign corporation authorized to do business in Virginia through its registered offices in Henrico County, Virginia.

11. LexisNexis is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

## FACTUAL ALLEGATIONS

### *Section 1681e(b) of The Fair Credit Reporting Act*
### *Require Substantive Investigations of Information CRAs Report*

12. "Congress enacted FCRA in 1970 out of concerns about abuses in the consumer reporting industry. *See* S. Rep. No. 91–517, at 3 (1969); 116 Cong. Rec. 35941 (1970) (statement of Sen. Proxmire); *id.* at 36570 (statement of Rep. Sullivan); . . . . In enacting FCRA Congress adopted a variety of measures designed to insure that agencies report accurate information." *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 414–15 (4th Cir. 2001).

13. "In recognition of the critical role that CRAs play in the credit markets and the serious consequences borne by consumers because of inaccurate information disseminated in consumer credit reports prepared by CRAs, Congress placed on a CRA what can only be described as very high legal duties of care, set forth . . . in 15 U.S.C. §§ 1681e(b), 1681i(a)(1)(A), and 1681i(a)(3)(A)." *Burke v. Experian Info. Sols., Inc.*, No. 1:10-cv-1064 AJT/TRJ, 2011 WL 1085874, at *4 (E.D. Va. Mar. 18, 2011).

14. One of these measures, 15 U.S.C. § 1681e(b), "deal[s] with the procedures consumer reporting agencies must follow when collecting and transmitting information. Congress

also gave individuals the right to sue reporting agencies for violations of FCRA. *Id.* Section 1681e(b) sets forth the CRAs' overall duly:

> (b) Accuracy of report. Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

*Burke v. Experian Info. Sols., Inc.*, No. 1:10-cv-1064 AJT/TRJ, 2011 WL 1085874, at *4 (E.D. Va. Mar. 18, 2011).

15. Further, as Defendant is aware, even though the term "investigation" is not used in § 1681e(b), it is clear that Defendant has a duty to conduct a reasonable initial investigation pursuant to § 1681e(b) as well as § 1681i(a) and that this is "central" to the CRA's duties of care under that portion of the Act:

> This conclusion flows from the plain meaning of both [§1681e(b) and §1681i(a)]. For example, Section 1681e(b) requires (1) "reasonable procedures" that (2) "assure" (3) "maximum possible accuracy." To "assure" means "to make sure or certain: put beyond all doubt." *Webster's Third New International Dictionary* 133 (1993). "Maximum" means the "greatest in quantity or highest degree attainable" and "possible" means something "falling within the bounds of what may be done, occur or be conceived . . . ." *Id.* at 1396, 1771. It is difficult to imagine how "maximum possible accuracy" could be guaranteed without an adequate investigation. Likewise, Section 1681i(a)(1)(A) requires a "reinvestigation," necessarily implying that an "investigation" was required to have been performed in the first instance.

*Burke*, 2011 WL 1085874, at *4.

### *Plaintiff Learns LexisNexis Is Reporting Her as Deceased*

16. In or around May 2021, Plaintiff applied for a loan through a credit union to finance home improvements. During the application process, the credit union accessed Plaintiff's consumer report from LexisNexis and was advised by LexisNexis that the Plaintiff "was deceased."

17. Plaintiff is not deceased.

4

18. The Social Security Administration Death Master Index did not and does not include Plaintiff's Social Security number as that of a deceased person.

19. Plaintiff was denied a loan from the credit union based in whole or in part on inaccurate information contained in the consumer report compiled and supplied by LexisNexis.

20. Shortly after the loan denial, Plaintiff submitted an online dispute to LexisNexis via its online Customer Care Portal to dispute LexisNexis' inaccurate reporting of her as deceased. She included in her dispute a copy of her driver license and Social Security card.

21. Despite Plaintiff's online dispute in May 2021 and the very clear evidence that she is alive and not deceased, LexisNexis continued to report her to Plaintiff's creditors as deceased.

22. On or about October 29, 2021, nearly five months later, LexisNexis through its Customer Care Portal responded that it had received Plaintiff's dispute and supporting documentation and LexisNexis is reviewing her dispute.

23. Plaintiff noted again that she is not deceased and that she submitted paperwork back in May 2021 evidencing she is not deceased.

24. On or about November 2, 2021, LexisNexis responded to Plaintiff via email, advising her to contact the LexisNexis Consumer Center by telephone.

25. On or about November 4, 2021, Plaintiff called LexisNexis' Consumer Center and spoke with two overseas representatives "Elaine" and "Leo." These representatives claimed LexisNexis lacked necessary documentation to prove Plaintiff is not deceased. Plaintiff asked to speak with someone stateside due to a language barrier and was told LexisNexis will have someone call her back, but no one ever called Plaintiff back.

26. On or about February 28, 2022, Plaintiff submitted a letter via Certified Mail to LexisNexis to obtain her consumer report.

27. On or about March 8, 2022, LexisNexis furnishes a copy of Plaintiff's consumer report to Plaintiff. Plaintiff's "date of death" is reported as "0/0/0," which would seem to indicate that LexisNexis was no longer reporting Plaintiff as deceased.

28. On or about March 23, 2022, Plaintiff, under the impression from the March 8, 2022 consumer report she received from LexisNexis that the inaccurate reporting about her being "deceased" had been resolved, returned to the credit union for home improvement financing.

29. On or about March 23, 2022, Plaintiff's credit union accessed Plaintiff's consumer report from LexisNexis and was yet again advised by LexisNexis that the Plaintiff is "deceased."

30. LexisNexis knew that Plaintiff was not deceased and had first-hand knowledge of that fact because of her multiple disputes as well as her request for a copy of her consumer report.

31. Only the living typically request copies of their consumer reports.

32. Plaintiff has spent months disputing inaccurate information within her consumer file with LexisNexis and is now having to endure substantial hardship because of LexisNexis' failure to report accurate information within Plaintiff's consumer file.

33. Defendant has been sued thousands of times in federal court by consumers alleging that it violated the FCRA by inaccurately reporting information without following reasonable procedures to assure that the information it sold about consumers was maximally accurate.

34. Plaintiff is one of those individuals, and LexisNexis knows she is alive because it recently responded to her request for a copy of her consumer report.

35. Just in the last 12 months alone, LexisNexis has been sued on such consumer complaints over 30 times.

36. Plaintiff has been deterred from securing person loans that she should have otherwise qualified for due to the inaccurate reporting of being deceased that the Defendant continued to include in Plaintiff's consumer reports.

37. The Plaintiff was denied the financing of a loan for much-needed home repairs because of the negative impact of Defendant's reporting her as "deceased."

38. As a result of the Defendant's conduct, actions, and inaction, Plaintiff suffered damages to include, but not limited to, loss of credit, out-of-pocket expenses, aggravation, emotional stress, inconvenience, embarrassment, and frustration.

39. The FCRA allows for a remedy for a "willful" violation. A willful act or violation includes, "not only knowing violations of [the statute], but reckless ones as well." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, at 57 (2007). A "reckless" action includes conduct whereby "the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 69.

40. Proof of willfulness includes, for example, "evidence that other consumers have lodged complaints similar to" the one made by the Plaintiff" and a failure to make the correction right away. *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 418 (4th Cir. 2001); *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 151 (4th Cir. 2008). Further, a lack of any internal procedures to anticipate or prevent inaccuracy is willful. *Daugherty v. Ocwen Loan Servicing, LLC*, 701 F. App'x 246, 249–50 (4th Cir. 2017).

41. As detailed above, the FCRA section at issue here, and informative guidance, have been around now for over 50 years. The FCRA's caution of Defendant's "grave responsibilities" to ensure accuracy has not changed.

42. The FCRA requires that Defendant must follow procedures which assure that the reports it sells meet the standard of "maximum possible accuracy." 15 U.S.C. § 1681e(b).

43. LexisNexis does not request or require a death certificate or any other proof from any data source which advises that a consumer is "deceased" showing that the consumer is, in fact, deceased before placing a "deceased" notation on that consumer's report.

44. LexisNexis does not independently verify with any source that a consumer is, in fact, deceased before placing a "deceased" notation on that consumer's report.

45. LexisNexis employs no procedures at all which assure that a consumer with a "deceased" mark on her report is, in fact, deceased before placing the "deceased" mark on that consumer's report and selling that report.

46. Such a policy is unreasonable for a number of reasons, not the least of which that LexisNexis nearly always possesses other information—such as that the consumer is paying her insurance policies or creditors are accessing the consumer's information from LexisNexis for purposes of making a present decision about granting the consumer credit—showing that the consumer is indeed alive.

47. Even in instances where other data on the face of the consumer's report indicates that she is not deceased, LexisNexis employs no procedures which assure that a consumer with a "deceased" notation on her report is, in fact, deceased before placing the "deceased" mark on that consumer's report.

48. Once a "deceased" mark is placed on a consumer's report and the consumer disputes the accuracy of the reporting, LexisNexis will not correct its reporting.

49. Defendant knows that living consumers are turned down for credit specifically because Defendant is reporting them as "deceased".

50. LexisNexis further knows that reporting a consumer as deceased is the most-harmful notation that can be attached to one's consumer file. There is no more derogatory notation—not bankruptcy, foreclosure, or repossession—than reporting a consumer as deceased.

51. Defendant is therefore aware that reporting a consumer as deceased is devastating to the consumer because it effectively halts the consumer's ability to engage in the credit market. Virtually all creditors view the deceased moniker as an indicator of fraud and, after seeing it attached to the file of someone who applies for credit, will refuse to grant credit to that customer.

52. Defendant has been on notice for years through consumer disputes and lawsuits that living consumers are turned down for credit specifically because Defendant is reporting them as "deceased."

53. LexisNexis has received thousands of disputes from consumers complaining that their LexisNexis consumer reports have them erroneously marked as "deceased".

54. LexisNexis knows that thousands of consumers are erroneously marked as "deceased" on their LexisNexis consumer reports, but said consumers are not on the Death Master File and are in fact, alive.

55. Nevertheless, LexisNexis employs no procedures which assure that a consumer marked as "deceased" on LexisNexis' consumer reports are, in fact, deceased.

56. Defendant also does not employ any procedures to limit or stop the furnishing of reports to third parties for consumers which it has marked as "deceased" under any circumstances.

57. At all times pertinent hereto, LexisNexis was acting by and through its agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of LexisNexis.

58. At all times pertinent hereto, the conduct of LexisNexis as well as that of its agents, servants, and/or employees, was intentional, willful, reckless, and in grossly negligent disregard for federal law and the rights of the Plaintiff.

59. At all times relevant to this Complaint, Defendant's conduct was willful and carried out in reckless disregard for consumers' rights under the FCRA. By example only and without limitation, Defendant's conduct was willful because it ran a risk of harm that was known or so obvious it should have been known by failing to implement any procedure to identify and correct these common errors prior to furnishing reports.

60. Defendant's conduct was likewise willful because it indiscriminately noted Plaintiff as deceased when it knew from her disputes, her request for her consumer report, and its owner consumer report about Plaintiff, that she is alive.

61. Defendant's procedures imposed on the Plaintiff and similarly situated consumers an unjustifiably and unreasonable risk of harm that could have been mitigated or avoided with just modest imposition.

### COUNT ONE: VIOLATION OF FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681e(b)

62. Plaintiff repeats the allegations in the foregoing paragraphs as though fully set forth herein.

63. Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer reports they furnished regarding Plaintiff. Despite Defendant knowing or at least having reason to know Plaintiff was alive, it published her consumer report to creditors indicating Plaintiff was deceased.

64. As a result of Defendant's conduct, Plaintiff suffered actual damages to include, but not limited to, loss of credit, out-of-pocket expenses, aggravation, emotional stress, inconvenience, embarrassment, and frustration.

65. Defendant's conduct, action and inaction were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. In the alternative, it was negligent entitling Plaintiff to recover actual damages under 15 U.S.C. §1681o.

66. Plaintiff is further entitled to recover her costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3).

## COUNT TWO: VIOLATION OF THE FAIR CREDIT REPORTING ACT
## 15 U.S.C. § 1681i

67. Plaintiff repeats the allegations in the foregoing paragraphs as though fully set forth herein.

68. Plaintiff informed LexisNexis through her dispute, that she was not in fact deceased and that she was alive and well.

69. It should have been evident, that Plaintiff was alive and well but thereafter, Defendant willfully violated 15 U.S.C. § 1681i by failing to delete inaccurate information in the Plaintiff's consumer file after receiving actual notice of such inaccuracies; by failing to conduct a lawful reinvestigation and by failing to maintain reasonable procedures with which to filter and delete the inaccurate deceased reporting in the Plaintiff's credit file.

70. As a result of Defendant's conduct, Plaintiff suffered actual damages to include, but not limited to, loss of credit, out-of-pocket expenses, aggravation, emotional stress, inconvenience, embarrassment, and frustration.

71. As a result of Defendant's violations of 15 U.S.C. § 1681i, the Plaintiff is entitled to recover her actual damages pursuant to 15 U.S.C. § 1681n and/or § 1681o, or in the alternative her statutory damages of $1,000 pursuant to 15 U.S.C. § 1681n.

72. Defendant's conduct, action, and inaction was willful, rendering Defendant liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

73. The Plaintiff is entitled to recover her costs and attorneys' fees from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff demands judgment for actual, statutory, and punitive damages against the Defendant, in addition to attorney fees and costs; prejudgment and post judgment interest at the legal rate; injunctive and declaratory relief; and any other relief the Court deems just, equitable, and proper.

The Plaintiff demands a trial by jury.

Respectfully submitted,

**KERRY JENNIFER SCROGGINS**

By /s/ Drew D. Sarrett
Drew D. Sarrett, Esq., VSB #81658
**CONSUMER LITIGATION ASSOCIATES, P.C.**
626 E. Broad Street, Suite 300
Richmond, Virginia 23219
Phone: (804) 905-9900
Facsimile: (757) 930-3662
Email : drew@clalegal.com

Leonard A. Bennett, Esq., VSB #37523
Craig C. Marchiando, Esq., VSB #89736
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Ste. 1-A
Newport News, VA 23601

Telephone: (757) 930-3660
Facsimile: (757) 930-3662
Email:  lenbennett@clalegal.com
Email:  craig@clalegal.com

*Counsel for Plaintiff*